# Exhibit A

**STANDARD CONSULTING AGREEMENT**
(Lubrizol Contract #31307)

This STANDARD CONSULTING AGREEMENT ("Agreement") is made and entered into as of October 14, 2010 ("Effective Date") by and between The Lubrizol Corporation, with its principal place of business at 29400 Lakeland Boulevard, Cleveland, Ohio 44092 ("Lubrizol") and International Business Machines Corporation, with its principal place of business at New Orchard Road, Armonk, New York 10504 ("Consultant").

RECITALS:

A. Lubrizol desires to retain Consultant to perform the Services (defined below) set forth in one or more separate Statements of Work (each, an "SOW") for Lubrizol and its affiliates and subsidiaries ("Enterprise"), subject to the terms and conditions of this Agreement. The term "Enterprise" means any legal entity (such as a corporation) and the subsidiaries it owns by at least fifty percent (50%). Each "Service" means performance of a task, assistance, support or access to resources (such as an information database) under this Agreement.

B. Consultant is willing to provide such Services, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto do hereby agree as follows:

1. Services.

(a) Lubrizol hereby retains Consultant as an independent contractor to perform the Services. Consultant's specific duties shall be set forth in one or more separate SOWs each of which shall: (1) detail the scope of work, Materials (as defined below) and fees for the Services; (2) be agreed to in writing and signed by both parties prior to such SOW becoming effective; and (3) incorporate the terms and conditions of this Agreement. If there is a conflict among the terms of this Agreement and those in a SOW, those in the SOW prevail over conflicting terms in this Agreement.

(b) Consultant agrees to use Consultant's reasonable efforts and abilities and exercise due professional care and competence in performing the Services. Consultant understands that Consultant's own previously acquired business and technical knowledge, expertise and experience such as, for example, knowledge of previously existing techniques, parts, equipment and other materials that may be applicable or adaptable to Lubrizol apparatus, products or processes, may be a material consideration inducing Lubrizol to enter into this Agreement, and Consultant agrees where applicable to employ such acquired technical and business knowledge, expertise and experience to the extent necessary to perform the Services. Nothing in this Agreement shall prevent Consultant from entering into agreements with others or from developing or providing hardware, software or services to others. Consultant represents that it has the requisite experience necessary to perform the Services.

(c) Upon Lubrizol's prior written consent, Consultant may engage subcontractors to provide or assist in providing the Services. If an employee or subcontractor of Consultant must be replaced before completion of a SOW (whether or not such replacement is required at Lubrizol's specific request, which may be made for any reason at any time in Lubrizol's sole discretion (provided such request is not made in violation of applicable laws related to employment discrimination), Consultant will provide both a qualified replacement and the current employee or subcontractor, if practicable, who is being replaced for a period of time not to exceed ten (10) business days to provide a smooth transition.

(d) Consultant shall be responsible for the performance of the Services and for breaches and defaults of this Agreement by Consultant and its subcontractors.

2. Compensation.

(a) Lubrizol agrees to pay Consultant for the Services at a rate to be agreed upon and set forth in a SOW for such Services.

(b) Consultant's invoices for such Services shall refer to this Agreement and if applicable, Lubrizol's purchase order number. Consultant shall invoice Lubrizol monthly for the Services, applicable taxes (if any) and reimbursable expenses (as described below). Payment is due upon receipt of invoice and payable within thirty (30) days from the date the invoice is received. Lubrizol agrees to pay by electronic funds transfer or other means acceptable to Consultant to an account specified by Consultant. In the event Lubrizol fails to pay any amount within such time period, Consultant reserves the right to suspend the provision of Services and to charge a late payment fee (not to exceed 1%) on such overdue undisputed amounts as its sole remedy for late payment; for purposes of clarification, in no case shall Lubrizol be responsible for interest charges, collection costs or attorney's fees for late payment. As part of specific Statement of Work, Consultant shall offer a Deferred Payment Plan (DPP) (which may include a servicing fee not to exceed .45%) as an alternative option to Lubrizol. Consultant shall be reimbursed for reasonable travel and business expenses only if such expenditures are pre-approved in writing by Lubrizol. Should Consultant present a written request for payment which does not contain the information required above, Lubrizol may, at its option, proceed to make full payment regardless or pay a portion of the invoice that is reasonably undisputed. In the event of a dispute or partial payment, Lubrizol shall promptly notify Consultant in writing and shall identify the nature of the missing information or disputed fees. Upon receipt of the missing information or resolution of the disputed amounts, Lubrizol will remit the balance of the payment to Consultant, but in no event will be liable for any interest, collection costs or attoney's fees because of such a delay in payment. Should Lubrizol proceed to make a particular payment regardless of missing information or unresolved dispute, this shall not constitute a waiver of Lubrizol's rights under this Agreement.

(c) Consultant understands and agrees that none of the remuneration or benefits provided by Lubrizol to its employees including, without limitation, salary, bonus, paid vacation and holidays, medical, life and disability insurance, pensions, unemployment and workers' compensation, profit-sharing plans and the like, shall be available to Consultant or any of Consultant's employees or agents. Further, Consultant waives for itself and its employees and agents any and all claims, which could be possibly based on its or their activities hereunder, to such remuneration and benefits of any kind to which it or they might be entitled if such employees or agents were hired as an employee of Lubrizol. If any authority imposes a duty, tax, levy, or fee upon any transaction under this Agreement excluding those based on Consultant's net income, Lubrizol agrees to pay that amount as specified in an invoice, unless Lubrizol supplies exemption documentation. Consultant acknowledges that it is responsible for any and all federal, state and local taxes which may be associated with the payments set forth in this Section or arising out of its activities.

3. Confidentiality. The parties' obligations as to confidentiality shall be governed by the Agreement for Exchange of Confidential Information (Lubrizol #31307-AECI) between the parties, dated the same day as this Agreement, as supplemented from time to time by means of a mutually executed Agreement for Exchange of Confidential Information Supplement For Disclosure.

4. Intellectual Property.

A SOW will specify Materials (defined below) to be delivered to Lubrizol and identify them as "Type I Materials", "Type II Materials", or otherwise as both parties agree. If not specified, Materials will be considered Type II Materials.

(a) "Materials" are literary works of authorship or other works (such as software programs and code, documentation, reports, and similar works) that Consultant may deliver to Lubrizol as part of a Service. The term "Materials" does not include licensed programs and other items available under their own license terms or agreements. At Lubrizol's request or upon termination of this Agreement and payment of applicable fees, Consultant shall promptly deliver to Lubrizol all such Materials in Consultant's possession, custody and/or control. Type I Materials are those Materials that Consultant hereby assigns to Lubrizol the ownership of copyright in those Materials and they will each constitute a "work made for hire" to the extent permissible under U.S. copyright law. Subject to Section 3, Lubrizol grants Consultant an irrevocable, nonexclusive, worldwide, paid-up license to use, execute, reproduce, display, perform, sublicense, distribute and prepare derivative works based on, Type I Materials.

(b) Consultant or its suppliers will own the copyright in Materials created as part of the Services that are identified as "Type II Materials". Consultant grants Lubrizol an irrevocable, nonexclusive, worldwide, paid-up license to use, execute, reproduce, display, perform, and distribute (within Lubrizol's Enterprise only) copies of Type II Materials.

(c) The parties understand and agree that the ownership of the copyright in all previous works or works developed outside of this Agreement and any modifications or enhancements of them that may be made under this Agreement of each of the parties, shall be the exclusive property of that party. To the extent that such Consultant works remain embedded in any Materials, they are licensed to Lubrizol in accordance with their applicable license separately provided by Consultant, or otherwise as Type II

Materials. No right is granted by this Agreement by either party to the other to use any registered or unregistered trademark or trade name or other designation of said other party in any promotion, publication or Web site without prior written consent.

(d) Notwithstanding anything else to the contrary, but without waiver of a party's patent rights, each party is free to use in its business activities the ideas, concepts, and know-how that are developed or provided by either party (orally or in writing) in the performance of a Service.

(e) Each party agrees to reproduce the copyright notice and any other legend of ownership on any copies made under the licenses granted in this section.

5. Warranties.

(a) Consultant represents and warrants to Lubrizol that Consultant has full power and authority to enter into this Agreement and that Consultant is not a party to any agreement or understanding, oral or written, or subject to any restriction or any order, law, rule or regulation that would adversely affect or restrict Consultant's ability to perform the Services.

(b) Consultant represents and warrants that all Services performed under this Agreement shall be performed in a good and workmanlike manner using reasonable care and skill and be performed in accordance with the current description including all completion criteria of the applicable SOWs.

(c) Consultant represents and warrants that all Materials delivered under this Agreement or any SOW shall not infringe the patent, trademark, copyright, mask work or trade secret rights of any third party, provided, however, that should there be a breach of the foregoing by Consultant, Lubrizol's sole and exclusive remedy and Consultant's sole obligation is the obligation contained in Section 8(a)(1) of this Agreement.

(d) Consultant disclaims all other warranties or conditions, express or implied including, but not limited to, the implied warranties or conditions of merchantability, non-infringement (provided however, the foregoing shall not be construed to negate IBM's warranty obligations contained in Section 5(c) of this Agreement), and fitness for a particular purpose. Further, Consultant does not warrant the uninterrupted or error-free operation of any Material or Service.

(e) If Consultant provides non-Consultant Services (services which are provided by third party suppliers that Consultant discloses and resells in a SOW) such non-Consultant Services are provided WITHOUT WARRANTIES OF ANY KIND. However, non-Consultant suppliers may provide their own warranties to Lubrizol.

6. Term and Termination.

(a) The term of this Agreement shall commence on the Effective Date and continue until December 31, 2013 (subject to earlier termination as permitted by this Agreement), and may be extended upon the mutual written agreement of both parties.

(b) Notwithstanding the foregoing: (1) Lubrizol may terminate this Agreement and any SOW, without cause, by giving written notice to Consultant at least thirty (30) days prior to the effective date of termination; (2) Lubrizol or Consultant may terminate this Agreement and any SOW, with cause, if the other party fails to perform any of its obligations hereunder or otherwise defaults under the terms and conditions hereof and such failure or default is not cured within fifteen (15) days after the non-defaulting party's notice to the other party. Termination of this Agreement shall not act as a termination of all outstanding SOWs. Unless otherwise specified in a SOW, termination of one SOW does not terminate a separate SOW.

(c) If a SOW is terminated in whole or in part, Lubrizol shall only be responsible for undisputed charges for Services and Materials Consultant actually provided by Consultant through Services termination, and for pre-approved, reasonable, reimbursable expenses Consultant actually pays for through Services termination; provided, however, that Consultant has an affirmative obligation to use its commercially reasonable efforts to mitigate its losses. Lubrizol shall not be liable or responsible for any other adjustment or termination charges.

7. Compliance with Laws and Ethical Guidelines.

(a) Consultant shall comply with federal, state and local laws, rules and regulations applicable to Consultant in its role as an information technology provider to the extent relating to its performance Services ("Consultant Laws") and all of the rules and regulations of Lubrizol and its Enterprises that are agreed to in a SOW or separately executed. Lubrizol will comply with laws applicable to Lubrizol's business to the extent relating to the performance of Lubrizol's obligations and receipt of Services. In this connection, the Parties explicitly acknowledge that the United States Foreign Corrupt Practices Act ("FCPA"), which applies to Consultant and Lubrizol, prohibits: (1) offering to pay or to give; (2) the promise to pay or to give; or (3) the payment or giving of anything of value, either directly or indirectly, to any official of a government other than the USA for the purpose of influencing an act or decision, in an official capacity, to assist companies of the USA, and certain USA-related companies, in obtaining or retaining business. (NOTE: Other Laws of the USA prohibit such activity with respect to officials of the U.S. government.)  The FCPA prohibits companies to which it applies from engaging indirectly in these prohibited activities by having other entities or persons carry out such activities.  Consultant covenants that it; (A) is not engaged, and will not engage, in any conduct in violation of the FCPA; and (B) will not offer, promise or use anything of value for any illegal purpose in connection with the Activities and Services carried out hereunder.

(b) It has been and continues to be the policy of Lubrizol, its majority owned affiliates, and the directors, officers, employees, agents and other representatives of each (collectively "LZ Entities") to comply with all laws, domestic and foreign, governing their operations and to conduct their affairs in a manner consistent with high moral and ethical standards ("Policy" or "Policies"). In furtherance of the Policy, LZ Entities also require that those entities engaged to assist them or to render services for or on their behalf agree to observe the Policy with respect to all activities carried out by, for, or on behalf of such entities in regard to providing such assistance or in rendering such services to such LZ Entities (collectively "the Activities"). Consultant, on behalf of themselves and their directors, officers, and employees,, agrees to observe the Policy and its requirements as identified and set forth in a SOW, with respect to all Activities carried out by any of them hereunder. In addition, Consultant acknowledges that it has read, reviewed and shall comply with Lubrizol's Ethical and Legal Conduct Guidelines located on Lubrizol's website at www.lubrizol.com.

(c) In the event Lubrizol reasonably believes that a breach of this Section has occurred or is likely to occur, Lubrizol may suspend performance of its obligations hereunder upon prior reasonable written notice to Consultant until such time as it has received confirmation to its satisfaction that no breach has occurred or is likely to occur. In the event of a breach of this Section, Lubrizol may terminate this Agreement promptly by written notice to Consultant.

8. Indemnification/Limited Liability.

(a) Intellectual Property Infringement.

(1) Consultant shall defend, indemnify and save Lubrizol harmless from and against any and all damages, liabilities, claims, losses, judgments, settlements and expenses (including, without limitation, reasonable attorneys' fees) arising out of, or in any way related to any third party claims of infringements that a court finally awards or that are included in a settlement approved by Consultant that a Material infringed a third party's patent, trademark, copyright, mask work, or trade secret. Consultant agrees to, and shall assume on behalf of Lubrizol and shall have the right to control, the defense of any court or agency action which may be brought against Lubrizol; provided, however, Lubrizol may employ its own counsel at its cost and further provided that no settlement is entered into that would require any monetary payment on the part of Lubrizol without its prior written consent, such consent not to be unreasonably withheld. The foregoing indemnification is contingent upon Lubrizol promptly notifying Consultant in writing of any such claim (provided that Lubrizol's failure to provide such notice shall not excuse Consultant except to the extent that it is materially prejudiced thereby), allowing Consultant to control, (provided that Lubrizol may employ its own counsel at its cost), and cooperating with Consultant in, the defense and any related settlement negotiations.

(2) If such a claim is made or appears likely to be made, Lubrizol agrees to permit Consultant to enable Lubrizol to continue to use the Materials, or to modify them, or replace them with Materials that are at least functionally equivalent in all material respects. If Consultant determines that none of these alternatives is reasonably available, then on Consultant's written request, Lubrizol agrees to return the Materials to Consultant. Consultant will then promptly reimburse Lubrizol the full amount Lubrizol paid Consultant for the creation of the Materials, plus any payments pursuant to Section 8(a)(1).

(3)    Consultant is not responsible for any claim to the extent it is caused by: (1) anything provided by Lubrizol or a third party on Lubrizol's behalf that is incorporated into the Materials or Consultant's compliance with any designs, specifications, or instructions provided by Lubrizol or a third party on Lubrizol's behalf; (2) a Material's use other than in accordance with its applicable licenses and restrictions; (3) any modification of a Material made by Lubrizol or by a third party on Lubrizol's behalf or the combination, operation, or use of a Material with any product, hardware device, program, data, apparatus, method, or process; or (4) the distribution, operation or use of the Material outside Lubrizol's Enterprise.

(4)    This Section 8(a) states Consultant's entire obligation and Lubrizol's exclusive remedy regarding any third party claim of infringement.

(b)    Bodily Injury/Death/Property Damage.

(1)    CONSULTANT SHALL ALSO DEFEND, INDEMNIFY AND SAVE LUBRIZOL HARMLESS FROM ANY AND ALL THIRD PARTY CLAIMS FOR PROPERTY DAMAGE (REAL OR TANGIBLE PERSONAL), BODILY INJURY OR DEATH ARISING OUT OF, OR IN CONNECTION WITH, THE SERVICES THAT ARE MADE BY ANY PERSON (INCLUDING BUT NOT LIMITED TO LUBRIZOL'S, CONSULTANT'S, OR CONSULTANT'S SUBCONTRACTORS', OFFICERS, EMPLOYEES AND AGENTS), IN EACH INSTANCE TO THE EXTENT CAUSED BY CONSULTANT'S OR ITS SUBCONTRACTORS' NEGLIGENCE OR WILLFUL MISCONDUCT, AND WILL DEFEND LUBRIZOL AGAINST SUCH CLAIMS AT ITS EXPENSE AND PAY ALL COSTS, DAMAGES AND REASONABLE ATTORNEY'S FEES THAT A COURT FINALLY AWARDS OR THAT ARE INCLUDED IN A SETTLEMENT APPROVED BY CONSULTANT. The foregoing indemnity is contingent upon, Lubrizol promptly notifying Consultant in writing of any such claim (provided that Lubrizol's failure to provide such notice shall not excuse Consultant except to the extent that it is materially prejudiced thereby), allowing Consultant to control (provided that Lubrizol may employ its own counsel at its cost), and cooperating with Consultant in, the defense and any related settlement negotiations.

(2)    Consultant's defense and indemnification obligation under Section 8(b)(1) shall not be limited in any way by any limitation on the amount of damages, compensation or benefits payable by or for Consultant under applicable Workers' Compensation Acts, disability benefit acts or other employee benefits acts (including, without limitation, Article 2, Section 35 of the Ohio Constitution and Ohio Revised Code Section 4123.74). With respect to its indemnity obligations to Lubrizol only, Consultant expressly waives its immunity from suit under applicable Workers' Compensation Acts, disability benefit acts or other employee benefits acts (including, without limitation, Article 2, Section 35 of the Ohio Constitution and Ohio Revised Code Section 4123.74).

(c)    Limitation of Liability.

(1)    Regardless of the basis on which Lubrizol is entitled to claim damages from Consultant (including fundamental breach, negligence, gross negligence, willful misconduct or other contract or tort claim), Consultant's liability for all claims in the aggregate arising from or related to each Service or otherwise arising under this Agreement will not exceed the amount of any actual direct damages up to the greater of $100,000 or the charges (if recurring, 12 months' charges apply) for the Service that is the subject of the claim; provided, however, that Consultant's liability for claims based on the gross negligence or willful misconduct of Consultant and its subcontractors will not exceed the greater of $5,000,000 or two (2) times the charges (if recurring, 24 months' charges) for the Service that is the subject of the claim. These limits also apply to any of Consultant's subcontractors and its program developers.  It is the maximum for which Consultant and its subcontractors are collectively responsible. Notwithstanding anything to the contrary, there shall be no such limitation on the damages for:

(A)    bodily injury or death caused by Consultant and its subcontractors, including, without limitation, those matters covered by the indemnity under Section 8(b);

(B)    damage to property (real or tangible personal) caused by Consultant and its subcontractors, including, without limitation, those matters covered by the indemnity under Section 8(b);

(C)    damages occasioned by Consultant's and its subcontractors unauthorized use, disclosure or other misappropriation of confidential information in breach of the confidentiality obligations in Section 3 above; and

(D)    any payments pursuant to Section 8(a)(1).

(2) Further, except for damages occasioned by Consultant's or its subcontractors' unauthorized use, disclosure or other misappropriation of confidential information in breach of the confidentiality obligations in Section 3 above and as expressly required by law without the possibility of contractual waiver, neither party, including Lubrizol's Enterprises and Contractor's subcontractors, shall be liable for any of the following even if informed of their possibility:

    (A) loss of, or damage to, data;

    (B) special, incidental, exemplary or indirect damages or for any economic consequential damages; or

    (C) lost profits, business, revenue, goodwill, or anticipated savings.

9. Exhibits. This Agreement includes the terms, conditions and provisions set forth in the following exhibits ("Exhibits"), which are attached hereto and incorporated herein by reference in their entirety (whether or not signed by Consultant):

    (a) Exhibit 1 – Insurance Requirements

    (b) Exhibit 2 – Drug Screening/Background Check

10. Miscellaneous.

(a) The rights and remedies of Lubrizol in this Agreement are cumulative and not exclusive. Consultant acknowledges and agrees that Lubrizol may be irreparably damaged if any of the terms, conditions or provisions of this Agreement are not performed in accordance with their specific terms and that any breach of this Agreement by Consultant may not be adequately compensated in all cases by monetary damages alone. Accordingly, in addition to any other right or remedy to which Lubrizol may be entitled, at law or in equity, it shall be entitled to seek to enforce any provision of this Agreement by a decree of specific performance and to temporary, preliminary and permanent injunctive relief. A party's rights, remedies, obligations and responsibilities which have accrued before, or by their nature would extend beyond, the expiration, termination or other cancellation of this Agreement or any SOW survive such expiration, termination or other cancellation and continue to bind the parties and their permitted successors and assigns indefinitely until fulfilled or waived (including, without limitation, Sections 3, 4, 5, 7, and 8).

(b) The parties intend that the relationship created hereby is that of an independent contractor. No provision of this Agreement creates or contemplates any partnership, joint venture, agency, employment relationship, representative relationship, fiduciary relationship or other similar relationship between the parties or any of their respective employees. Consultant shall not have, nor shall it represent itself as having, the authority to: (1) act for or on behalf of Lubrizol; (2) make any representations or warranties for or on behalf of Lubrizol; (3) bind Lubrizol to any contract or any other matter; (4) incur any obligation or indebtedness for or on behalf of Lubrizol; or (5) extend credit in Lubrizol's name. Consultant will be solely and entirely responsible for its acts and for the acts of its agents, employees and subcontractors.

(c) All notifications, requests, demands and other communications required or permitted under this Agreement (including, without limitation, notices of breach and/or termination of this Agreement) shall be in writing and addressed and delivered to the recipient at the address, facsimile number or email specified below (or such other address, facsimile number or email address as may be designated pursuant to this provision):

If to Lubrizol:

The Lubrizol Corporation
29400 Lakeland Boulevard
Wickliffe, Ohio 44092
Attention: Jim Ockington
Phone: 440-347-5376
Email: James.Ockington@Lubrizol.com

If to Consultant:

International Business Machines Corporation
6100 Oak Tree Blvd., Suite 490
Cleveland, Ohio 44131-6949
Attention: Joan S. Vitikas-Ferritto
Phone: 216-370-5412 or 216-798-4102
Email: jvitikas@us.ibm.com

Notice will be deemed given: (1) on delivery, when delivered in person or by courier during a business day, otherwise on the next business day after delivery; (2) the same day, when sent by facsimile or email during a business day, otherwise on the next business day after transmission or sending, provided that the sender has a transmission report confirming transmission of the correct number of pages to the other party's facsimile number or proof that the email has been sent to a proper email address; or (3) five (5) business days after deposit in the mail to be sent by certified mail, return receipt requested.

(d)     This Agreement, the SOWs and Exhibits contain the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior written or oral agreements, representations, warranties, promises, covenants, commitments or undertakings between the parties. All of these documents which form the Agreement are intended to be complementary and to describe and provide for a complete agreement. Consultant may use its standard business forms (such as quotations, invoices or acknowledgements) to administer the Agreement, but use of such forms shall be for convenience purposes only. In no event shall the preprinted terms, conditions or provisions found on any such business forms including Lubrizol's purchase orders (including, without limitation, any terms, conditions or provisions which are different from or additional to the terms, conditions or provisions of the Agreement) be considered an amendment or modification of the Agreement, even if such business forms are signed by representatives of both parties. Such preprinted terms, conditions and provisions shall be deemed null and void and of no effect.

(e)     Lubrizol and Consultant's rights and obligations under this Agreement are personal in nature and shall not be transferable by assignment, delegation, or otherwise without the prior written consent of the other (which shall not be unreasonably withheld), and any attempt to do so shall be void. For purposes of this Agreement, the assignment of this Agreement, in whole or in part, within the Enterprise of which either party is a part, or to a successor organization by merger or acquisition does not require the consent of the other party. Consultant is permitted to assign its rights to payments under this Agreement without obtaining Lubrizol's consent. It is not considered an assignment for Consultant to divest a portion of its business in a manner that similarly affects all of its customers. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns. Lubrizol agrees not to resell any Service without Consultant's prior written consent and any attempt to do so is void.

(f)     Except as set forth in this Agreement, this Agreement is not intended to be for the benefit of any third party, is not enforceable by any third party and will not confer on any third party any remedy, claim, right of action or other right.

(g)     The failure of either party to exercise any rights under this Agreement in a particular instance will not operate as a waiver of any right to exercise the same or different rights in any subsequent instance. The waiver by either party of any breach of this Agreement by the other party in a particular instance shall not operate as a waiver of subsequent breaches of a same or different kind. Any waiver must be in writing and signed by the party making the waiver.

(h)     This Agreement may only be modified or amended, if the modification or amendment is made in writing and is signed by both parties.

(i)     If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited.

(j)     This Agreement shall be governed by the laws of the State of Ohio, without regard to conflict of laws rules thereof. Both parties hereby irrevocably consent and submit to the exclusive jurisdiction of the state courts of Ohio and of the United States District Courts located in the state of Ohio in connection with any litigation arising out of the Agreement, and both parties hereby expressly waive any objection they have or may have as to the venue of any such courts.

(k)     Both parties acknowledge and agree that this Agreement has been freely negotiated by both parties and that, in any dispute over the meaning, interpretation, validity or enforceability of this Agreement or any of its terms or conditions, there shall be no inference, presumption or conclusion drawn whatsoever against either party by virtue of that party having drafted this Agreement or any portion thereof.

(l)     Headings of the articles, sections and subsections of this Agreement are for the convenience of the parties only, and shall be given no substantive or interpretive effect whatsoever. The use of a particular pronoun herein shall not be restrictive as

to gender or number but shall be interpreted in all cases as the context may require. Any action required hereunder to be taken within a certain number of days shall be taken within that number of calendar days (and not business days unless so stated); provided, however, that if the last day for taking such action falls on a weekend or a federal holiday, the period during which such action may be taken shall be automatically extended to the next business day.

(m)  The original of this Agreement has been written in English. The parties waive any right each may have under applicable laws to have this Agreement written in any other language. Each party represents that it has the ability to read and write in English and has read and understood this Agreement. If this Agreement is translated into a language other than English, the English version and interpretation shall govern and prevail. All communications between the parties hereunder shall be in English.

(n)  This Agreement may be executed in counterparts, each of which when executed and delivered shall be deemed an original. All of such counterparts shall constitute one and the same instrument.

(o)  Each party agrees to comply with all applicable import and export control laws, orders, policies, regulations and rules, including those of the United States that prohibit or limit export for certain uses or to certain end users.

(p)  Lubrizol agrees to provide Consultant with sufficient, free and safe access to its facilities and systems for Consultant to fulfill its obligations.

(q)  Lubrizol agrees to allow Consultant and Consultant's subsidiaries (and their successors and assigns, contractors and Contractor Business partners) to store and use your contact information including names, phone numbers and email addresses anywhere they do business.

(r)  Each party is free to enter into similar agreements with others.

(s)  Neither party will be liable to the other for any failure or delay in the performance of such party's non-monetary obligations due to causes beyond its control.

(t)  Lubrizol agrees that Lubrizol is responsible for the results obtained from the use of the Materials and Services; provided however, the foregoing shall not be construed to negate IBM's warranty obligations hereunder.

(u)  Each party grants the other only the licenses and rights expressly specified in this Agreement. No other licenses or rights (including licenses or rights under patents) are granted.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

The Lubrizol Corporation

By: _____
Signature

James W. Ockwig
Printed Name

Title: IS Director, Application Services

Date: 10/15/2010

International Business Machines Corporation

By: _____
Signature

Albert Opher
Printed Name

Title: Senior Partner

Date: October 14, 2010

EXHIBIT 1
INSURANCE REQUIREMENTS

Consultant shall maintain in full force and effect insurance of the following types and amounts, and which shall be written by insurance companies having an A.M. Best financial strength rating of A-/VII or better.

A. Consultant shall carry statutory Workers' Compensation Insurance in compliance with all requirements of the laws of the State of Ohio. In addition, Consultant shall carry Employer's Liability Insurance with limits of not less than:

| | |
|---|---|
| Each Accident | $1,000,000 |
| Disease – Policy Limit | $1,000,000 |
| Disease – Each Employee | $1,000,000 |

B. Consultant shall carry Commercial General Liability Insurance affording coverage for contractual liability, products and completed operations hazards, broad form property damage liability with limits of not less than:

| | |
|---|---|
| General Aggregate | $ 3,000,000 |
| Products - Comp/Ops Aggregate | $ 3,000,000 |
| Personal & Advertising Injury | $ 3,000,000 |
| Each Occurrence | $ 3,000,000 |
| Fire Damage (any one fire) | $500,000 |

C. Consultant shall carry Automobile Liability Insurance on all owned or hired autos, as well as non-owned autos with combined single limits of not less than $1,000,000.

D. Consultant shall carry Professional Liability/Errors and Omissions Insurance of not less than $3,000,000 per claim and in the annual aggregate.

E. INTENTIONALLY OMITTED.

F. All deductibles and self-insured retentions carried by Consultant under its insurance program are the sole responsibility of Consultant and shall not be borne in any way by Lubrizol.

G. Lubrizol shall be made an additional insured on each policy of insurance required by Sections B and C. The policies of insurance required by B and C shall respond as primary insurance and non-contributory only with respect to liability arising out of this Agreement and only to the extent of IBM's negligence.

H. INTENTIONALLY OMITTED.

I. INTENTIONALLY OMITTED.

J. Prior to the commencement of the Work, Consultant shall furnish Lubrizol with Certificates of Insurance showing Consultant's procurement of the required insurance above. Each such Certificate shall accurately reflect the insurance in place, and shall contain language: (i) providing that the insurer will endeavor to provide to Lubrizol thirty (30) days prior written notice shall be given to Lubrizol prior to cancellation of the coverage; and (ii) confirming that Lubrizol is an Additional Insured as required by Sections B and C hereof. If required by an insurance policy, Consultant shall furnish Lubrizol with Endorsements signed by Consultant's insurance carrier to effect any of the foregoing; this requirement is waived if the Consultant's insurance policy contains a Blanket Additional Insured endorsement.

K. INTENTIONALLY OMITTED.

L. INTENTIONALLY OMITTED.

M.   Unless otherwise agreed in any applicable SOW, Consultant shall cause Consultant's subcontractors used in the performance of a SOW to procure and to maintain in full force and effect insurance of the types and amounts, and meeting all of the requirements, described in this Exhibit 1.

N.   The foregoing insurance requirements are minimum requirements intended to benefit Lubrizol; shall not be interpreted to limit Consultant's liability to Lubrizol in any manner whatsoever; and are separate from, and independent of, Consultant's other obligations under this Agreement, including but not limited to Consultant's obligations to defend, indemnify and hold Lubrizol harmless.  Consultant's failure to provide insurance as required hereunder, or Consultant's failure to supply Certificates or Endorsements that comply with Section J, or the failure of Lubrizol to require evidence of insurance or to notify Consultant of any breach of the requirements of these provisions or deficiencies in the insurance obtained, shall not constitute a waiver by Lubrizol of any of the these insurance requirements, or a waiver of any other terms of this Agreement, including but not limited to Consultant's obligations to defend, indemnify and hold Lubrizol harmless.

EXHIBIT 2
DRUG SCREENING/BACKGROUND CHECK

1. **Drug Screening.** Throughout the term of a SOW and at Lubrizol's written request, Consultant shall perform the following one-time drug screening test(s) on its employees, who shall be providing Consulting Services under the direct supervision of a Lubrizol employee pursuant to an SOW and the Agreement: FIVE PANEL DRUG SCREENING. The drug screening must be repeated on any Consultant absent from Lubrizol for six months or more.

2. **Background Checks.** Throughout the term of a SOW and at Lubrizol's written request, Consultant shall provide the following one-time background checks, on its employees, who shall be providing Consulting Services under the direct supervision of a Lubrizol employee pursuant to an SOW and the Agreement. The criminal history search will be conducted to the extent permitted by applicable law for each county of residence. Lubrizol's Background Check requirements are as follows:

| | |
|---|---|
| Employment History | Includes employment dates and position. Up to 2 employment verifications |
| Education Verification | Confirmation of the applicant's dates of attendance, degree earned and date of graduation. Transcripts are also available (may have an additional fee). Highest Degree Verified |
| Social Search | Verification that number was issued by the Social Security Administration and is not listed in the files of the deceased. Verifies name, number and addresses. A great tool in determining where to conduct criminal record searches. |
| Crime Track- (Criminal Database and National Sex Offender Search) | Database search containing records from 50 states and over 200 million records, including a 50 state sex offender search. *Date of birth required. |
| Global Track- (Patriot Act Search) | Patriot Act conforming search, which includes Office and Foreign Asset Control (OFAC) of suspected terrorists entities and individuals and other watch lists. |
| County Criminal Search | All counties available. Includes felony convictions and misdemeanors where available. The foundation block in the pre-screening process containing the most up-to date information. Searches all names, counties of residence, employment and contiguous counties. (Contiguous counties – Areas of residence only.) |
| Federal District Criminal Search | Federally prosecuted crimes, including kidnapping, bank robbery, bank fraud, internet child pornography, terrorism and others not found at the State or County level. Searches all names, districts of residence, employment and contiguous counties. (Contiguous counties – Areas of residence only.) |
| Driving Record | Includes driving status, dates, descriptions of violations, suspensions or revocations. |

All background checks and drug screening shall be completed within 3-7 business days of Lubrizol's written request. IBM will utilize its own service provider for the performance of such background checks and drug screening. IBM shall determine the form, coverage and methodology of background checks and drug screening undertaken by IBM.

IBM will certify to Lubrizol in writing that background checks are successful and that drug screens have passed. In the event of a failed drug screening or background check, IBM will not place or retain such Consultant employee under the SOW.

Any and all background screening and/or drug testing costs shall be borne by the Consultant.