UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **THE LUBRIZOL CORPORATION,** | ) | CASE NO. 1:21-CV-870 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **INTERNATIONAL BUSINESS** | ) | OPINION AND ORDER |
| **MACHINES CORPORATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is Defendant International Business Machines Corporation's ("IBM") Partial Motion to Dismiss Second Amended Complaint. (ECF #43, SEALED.) Plaintiff The Lubrizol Corporation ("Lubrizol") has responded in opposition (ECF #43, SEALED) and IBM has replied in support. (ECF #59, SEALED.)

Defendant seeks the dismissal of Counts Two through Seven of Plaintiff's Second Amended Complaint, which allege claims for: 1) Negligence/Professional Negligence, 2) Negligent Misrepresentation, 3) Fraudulent Inducement, 4) Fraud, 5) Constructive Fraud and 6) Violation of Ohio Deceptive Trade Practices Act ("DTPA").

Defendant IBM has requested oral argument. (ECF #59, SEALED.)

For the following reasons Defendant's motion is **DENIED IN PART**. The Court will hold the remaining issues in abeyance pending oral argument.

**BACKGROUND FACTS**

1

This dispute arises out of the failure of a longstanding relationship between two sophisticated international business entities. Lubrizol alleges it was duped by IBM into implementing a new enterprise resource planning software ("ERP") system IBM knew it was not competent and unqualified to install. The consultation on the system and its implementation were performed under a series of contracts. However, after installation, Lubrizol contends the system failed to perform as advertised and required, resulting in millions of dollars of purported damages.

The central thrust of the challenged claims stem from what Lubrizol purports was a coordinated "bait and switch" scheme by IBM, wherein it knew the limitations of its employees and experience but misrepresented those qualifications and the benefits and capabilities of the new ERP system at each stage of the process from initial consideration through final implementation and roll out.

## LAW AND ARGUMENT

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Twombly does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. See *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001).

IBM contends Lubrizol's Ohio Deceptive Trade Practices Act Claim must be dismissed because Lubrizol is a consumer and consumers do not have standing to assert DTPA claims. (ECF #43-1 at 28-9.) Lubrizol counters that whether consumers have standing under the DTPA has never been directly addressed by the Supreme Court of Ohio and there is a split in authority on the issue, citing *Phillips v. Philip Morris Cos.,* 290 F.R.D. 476, 482 (N.D. Ohio 2013). Lubrizol further argues that it is not a consumer, but a "commercial entity engaged in a commercial venture." (ECF #54, SEALED, citing SAC at ¶ 202.)

The DTPA is violated when, in the course of the person's business, vocation, or occupation, a person engages in any of thirteen enumerated deceptive business practices. Relevant to this analysis are the prohibitions against misrepresenting the characteristics, ingredients, uses, benefits or quantities of goods and services, misrepresenting that "a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" (O.R.C. § 4165.02 (A)(7)), or misrepresentations that "goods or services are of a particular standard,

3

quality, or grade, or that goods are of a particular style or model, if they are of another." (*Id* at (A)(9)).

While the Ohio Supreme Court has not determined whether consumers have standing under the ODTPA, "[t]he vast majority of federal courts and all lower state courts to address the issue have concluded that relief under the [O]DTPA is not available to consumers." *Phillips v. Philip Morris Cos. Inc.,* 290 F.R.D. 476, 482 (N.D. Ohio 2013). Ohio courts have consistently held that the ODTPA "is substantially similar to the federal Lanham Act, and . . . that individual consumers are barred from bringing actions under the Lanham Act." *Michelson v. Volkswagen,* 2018-Ohio-1303, 99 N.E.3d 475, 479 (Ohio App 2018). This is because the purpose of the Act "is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct." (*Id.*)

Accordingly, the Court must determine whether the Second Amended Complaint ("SAC") makes allegations or permits reasonable inferences that Lubrizol was a member of the commercial class subject to unscrupulous commercial conduct such that they have standing to assert its DTPA claim. The Court finds that it does.

According to Lubrizol, it is "a commercial entity engaged in a commercial venture—specifically, the manufacture, sale, and distribution of specialty chemicals and performance materials." (SAC ¶ 202.) "Lubrizol engaged with IBM, and eventually hired and paid fees to IBM, based on IBM's commercial misrepresentations…." (*Id.*) Lubrizol alleges IBM misrepresented: "the capabilities, attributes and benefits of the S/4 software" (*Id.*. at ¶ 203); "the depth, level, quality, and value of IBM's knowledge of Lubrizol's existing systems and business processes that IBM had obtained during its interactions with Lubrizol" (*Id.*); "IBM's experience, skills, qualifications, and expertise in S/4 implementations" (*Id.*); and "the experience, skills,

4

qualifications, and expertise of IBM's proposed Project team with respect to ERP implementations generally, S/4 implementations specifically." (*Id.*) According to Lubrizol, it "sent IBM a notice of termination in April 2020. It would take several more months for Lubrizol to stabilize the S/4 system, at great cost in terms of remediation fees, internal spend, employee morale, and customer relationships." (*Id.*. at ¶ 27.)

Lubrizol alleges this was a commercial endeavor and the DTPA expressly reads that a party bringing a DTPA claim "need not prove competition between the parties to the civil action." O.R.C. § 4165.02(B). The plain language of the DTBA further prohibits misrepresentations concerning the quality or use of goods or services and the characteristics and qualifications of persons providing those goods or services. Lubrizol's SAC expressly alleges the software and services provided by IBM were not accurately represented, nor were the qualifications and skills of the personnel IBM represented would be deployed to meet Lubrizol's needs. Based on the allegations of the Complaint and all reasonable inferences therefrom, Lubrizol has adequately plead a violation of the Ohio Deceptive Practices Act.

The Court's conclusion is further supported by a deeper examination of the purpose of the DTPA. As one Ohio court reasoned, the DTPA is not applicable to consumers because it is intended to provide commercial entities similar protections to those offered consumers under the Ohio Consumers Sales Practices Act. In *Blankenship v. CFMOTO Powersports, Inc.,* 2011-Ohio-948, ¶ 28, 161 Ohio Misc. 2d 5, 17, 944 N.E.2d 769, 778 the court wrote, "if consumers had standing to sue under the DTPA, the CSPA would be rendered superfluous because both prohibit the same type of conduct. The fact that there is already a statute, i.e., the CSPA, that expressly provides a cause of action for a consumer based upon the deceptive trade practices of a company naturally leads to the conclusion that the DTPA, a statute similar to the CSPA, creates a

similar cause of action for commercial entities for the deceptive trade practices of other commercial entities."

The distinction between consumer transactions and commercial transactions is further explained by a court of this District which held the DTPA:

> prohibits representing that "goods or services have . . . characteristics . . . uses, benefits, or quantities that they do not have." The Sixth Circuit has held that ODTPA protects persons engaged in commerce, not individual consumers. Therefore, "a person who seeks recovery under the DTPA must also be engaged in some type of commercial activity" as part of a "business, vocation, or occupation." The Plaintiffs respond that they are not individual consumers, but rather persons engaged in commercial activity. They say that they purchased the Properties "for the commercial purpose of producing revenue," a purpose distinguishable from other "plainly consumer transactions" where courts have declined to find standing for plaintiffs purchasing vodka, personal training sessions, or cigarettes. This Court agrees. (Internal citations omitted).

*Rui He v. Rom,* No. 15-cv-1869, 2016 U.S. Dist. LEXIS 137183, at *10-11 (N.D. Ohio Oct. 3, 2016).

The Court agrees with the *Rui He* court's analysis. The transactions at issue here arose out of a commercial endeavor between two commercial entities and concerns products and services distinguishable from transactions that are under Ohio law considered consumer transactions. For reference, consideration of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01(D), a statute described as similar to the DTPA by Ohio courts, defines a consumer as "a person who engages in a consumer transaction with a supplier." It further defines a consumer transaction as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code Ann. § 1345.01(A). Because Lubrizol does not allege a consumer transaction and because the conduct alleged by Lubrizol gives rise to a DTPA claim, the Court **DENIES** IBM's Motion to Dismiss Count VII of the SAC.

The Court finds that oral argument will assist the Court to resolve the remainder of Defendant's Partial Motion to Dismiss Second Amended Complaint. The Court will contact the parties for scheduling separate from this Order.

**IT IS SO ORDERED.**

                                        /s Christopher A. Boyko
                                        **CHRISTOPHER A. BOYKO**
                                        **United States District Judge**

**Dated: September 30, 2024**